IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| v. | : Case No. 7:19-CR-25 (WLS) |
| QUINTON JARED SIMMONS, | : |
| Defendant. | : |

## ORDER

Before the Court is a Motion to Quash Subpoenas filed by non-parties Jason Seacrist and Mark Pro of the Georgia Bureau of Investigations ("GBI"). (Doc. 71.) For the following reasons, the Motion to Quash is **GRANTED-IN-PART** and **DENIED-IN-PART**.

### I.    PROCEDURAL BACKGROUND

Pursuant to a Superseding Indictment filed on February 11, 2020, Defendant is charged with three counts: (1) Possession with Intent to Distribute Methamphetamine, (2) Possession of a Firearm by a Convicted Felon, and (3) Possession of a Firearm in Furtherance of a Drug Trafficking Crime. (Doc. 44.)

Through counsel, on March 12, 2020, Defendant filed a motion to suppress "any and all evidence obtained as a result of his illegal seizure and the illegal search of his car." (Doc. 47 at 1.) The Court held a hearing on the motion on August 4, 2020. (*See* Doc. 57.) During the same time-frame the COVID-19 pandemic caused this district to enter a moratorium on jury trials that extended, as of August 2020, through September 13, 2020. (Doc. 60.) Expecting to resume jury trials in October 2020, and notwithstanding the pending motion to suppress, the Court ordered the Parties in this case to confer and inform the Court by September 23, 2020 whether the case was ready to proceed to trial. (Doc. 63.) On September 18, 2020, Defendant filed an *ex parte* Motion for Subpoenas in which he stated that he was ready to proceed to trial in October 2020 and requested the Court to issue subpoenas to Special Agent Benjamin

1

Collins,[1] Special Agent in Charge Mark Pro, and Assistant Special Agent in Charge Jason Seacrist for certain GBI records that he argued were essential for his defense. (Doc. 65.) The Court granted the motion for subpoenas. (Doc. 67.) Thereafter, the Parties jointly moved to continue trial from October 2020, and the Court continued trial to the February 2021 trial term. (Docs. 70 & 72.) Defendant's motion to suppress has been denied. (Doc. 73.) The moratorium on jury trials is currently set to expire on February 28, 2021. (Doc. 81.)

In the meantime, GBI agents Seacrist and Pro (hereinafter the "GBI agents") filed the pending Motion to Quash Subpoenas. (Doc. 71.) The Court held a hearing on the motion on October 21, 2020 and has also received Defendant's response brief and exhibits and both Parties' supplemental briefs. (Docs. 76, 77, 82, 83.) Thus, the motion is ripe for review.

## II.   LEGAL ANALYSIS

Subpoenas in federal criminal proceedings are governed by Rule 17 of the Federal Rules of Criminal Procedure. Rule 17(c) provides that "[a] subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence." Fed. R. Crim. P. 17(c)(1). On a prompt motion, "the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). "A marshal, a deputy marshal, or any nonparty who is at least 18 years old may serve a subpoena. The server must deliver a copy of the subpoena to the witness. . . ." Fed. R. Crim. P. 17(d).

In their motion, the GBI agents assert three overarching reasons that the subpoenas should be quashed:

1) They were served via email and not personal mail;
2) They are unreasonable because they compel production at counsel's office in less than three business days without a formal proceeding scheduled;

---

[1] Collins is not a named movant in the motion to quash, and it is unclear whether he has received or will comply with the subpoena issued to him. Defendant's exhibits indicate that Collins now works for the Department of Correction, so he may not have any responsive records in his possession. *See, e.g.*, Doc. 76-11.

2

3) They are unreasonable and oppressive because they seek materials that are not related to this case and "which should be entitled to protection as an open and ongoing criminal investigation and prosecution";

    a. They constitute a fishing expedition; and

    b. They seek materials that are protected from production under Georgia law.

(Doc. 71.) Defendant has responded that the subpoenas should not be quashed because the defense was informed they could serve them via email, the subpoenas were in fact received, the subpoenas seek information essential for Simmons' defense at trial, and the information sought is not "otherwise procurable reasonably in advance of trial by exercise of due diligence." (Doc. 76.)

### A. Defective Service

The Federal Rules of Criminal Procedure require that subpoenas be served personally, and Rule 17 provides no exceptions. Although the Eleventh Circuit has not addressed whether service can be made in other formats, other courts in this district have concluded that service must be made in-person. *See, e.g., United States v. Scott*, No. CR417-050, 2018 U.S. Dist. LEXIS 78438, at *4 (S.D. Ga. May 9, 2018) ("[I]t is clear that service by email is ineffective."); *United States v. Johnson*, No. 06-0049, 2006 U.S. Dist. LEXIS 103883, at *3 (S.D. Ala. June 28, 2006) "Rule 17 requires personal service of a criminal subpoena. . . . There is no provision for service by certified mail in the criminal rules.") Defendant cites a Southern District of Florida case indicating that a subpoena should not be quashed when "service was reasonably designed to ensure actual receipt of the subpoena." (Doc. 76 at 7) (citing *Rainey v. Taylor*, No. 18-24802-MC, 2019 WL 1922000, at *2 (S.D. Fla. Apr. 30, 2019)). But that case was a civil case citing only to other non-binding civil cases. Defendant has cited no legal precedent that subpoenas in a criminal case can be served by email. Furthermore, the record does not clearly reflect that the GBI agents consented to accept service of the subpoenas via email.

Nonetheless, service can be easily remedied. Other courts addressing motions to quash for service in criminal cases have allowed proper service to be effected. *See, e.g., United States v. Bradley*, No. CR405-59, 2006 U.S. Dist. LEXIS 32588, at *6 (S.D. Ga. Mar. 16, 2006) (granting motion to quash because Rule 17 was not "strictly complied with," even though defendant asserted that an employee said she would accept the subpoena in that format, and advising

3

that "counsel's safest course would be to effect personal service of the subpoena."); *United States v. Sandoval*, No. 10-20243-CR-ALTONAGA/Brown, 2010 U.S. Dist. LEXIS 78726, at *7 (S.D. Fla. July 13, 2010) (proceeding to its analysis of the substance of the subpoena assuming that the defendant "will likely cure the improper service by effecting proper service of the same subpoena."). Thus, to ensure that service comports with Rule 17, the subpoenas will be quashed on this basis, and Defendant may be allowed to perfect service.[2]

### B. Unreasonable Timeframe

The Court need not address the specific argument that a subpoena requiring production within three days without a formal proceeding scheduled is overly burdensome. As the Court has explained, the Court had informed the Parties in September 2020 that it would be setting this case for trial if it was ready to proceed; thus, it was clear to the Court that the subpoenas issued to the GBI agents were in preparation for the trial expected to occur in October 2020. (Docs. 63 & 65.) Nonetheless, jury trials cannot resume in this district at least until March 2021 due to the COVID-19 pandemic (Doc. 81); therefore, sufficient time remains for subpoenas to be properly served and responded to before any trial in this case.

### C. Relevancy

The GBI agents argue that "Defendant offers no explanation why the investigative records of a crime occurring at a different time and unrelated to the crimes with which he has been charged are relevant to his case or how a copy of these records might be admissible in trial." (Doc. 71 at 6.) A subpoena need not contain this information. The rules provide that "[u]pon a defendant's *ex parte* application, the court must order that a subpoena be issued for a named witness if the defendant shows an inability to pay the witness's fees and the necessity of the witness's presence for an adequate defense." Fed. R. Crim. P. 17(b). Defendant has already explained to the Court in his *ex parte* motion why he needs these materials for his defense at trial, and the Court has granted the motion on that basis. (Docs. 65 & 67.)

Furthermore, Defendant has argued in his response brief (and *ex parte* at the hearing) that the materials he seeks are essential for his defense in this case. (*See* Doc. 76 at 9) (citing

---

[2] Counsel for the GBI agents somewhat conceded that this course could be followed in arguing at the hearing that even if service is perfected and sufficient time is provided for them to produce responsive documents, they primarily object to the subpoenas because they seek information from an active murder investigation.

4

*United States v. Nixon*, 418 U.S. 683, 698-70 (1974)) (*superseded by statute on other grounds*). The materials sought would be relevant for the defense based on Defendant's arguments to the Court, and they are not otherwise procurable. Thus, the Court will not quash the subpoenas on this basis.

### D. Seeks Materials from an Ongoing Criminal Investigation

The heart of the GBI agents' argument is that because the Georgia Open Records Act, O.C.G.A. § 50-18-72 (a)(4), exempts records of a pending criminal investigation or prosecution from public disclosure, the Court should quash the subpoenas. (Doc. 71 at 7-8.) Defendant argues that he has complied with the "four part test articulated by the Supreme Court:"

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.

(Doc. 76 at 8) (quoting *Nixon*, 418 U.S. at 698–700.) Further, Defendant argues in his supplemental response brief that Georgia law does not control and is contrary to Rule 17(c) and federal case law interpreting issuances of subpoenas in federal criminal cases. (Doc. 83 at 2.) He argues that he has a fundamental due process right as a defendant in a federal criminal case to obtain the requested materials and present them in his defense. (Doc. 83.) He also states that he is amenable to a protective order limiting the disclosure of the information for purposes unrelated to the preparation of his defense in this case. *Id.* at 3.[3]

"Enforcement of a pretrial subpoena *duces tecum* must necessarily be committed to the sound discretion of the trial court since the necessity for the subpoena most often turns upon a determination of factual issues." *Nixon*, 418 U.S. at 702. "[N]o citizen, not even the President, is categorically above the common duty to produce evidence when called upon in a criminal proceeding." *Trump v. Vance*, 140 S. Ct. 2412, 2431 (2020). As such, courts generally balance

---

[3] Given the nature of the GBI's asserted privilege, the Court is not satisfied at this time that a protective order is sufficient.

5

the competing interests and determine on a case-by-case basis whether a subpoena issued under Rule 17(c) should be quashed.

Most cases interpreting quashing a Rule 17(c) subpoena do so in the context of federal grand jury subpoenas. "A federal grand jury has extremely broad investigatory powers and, . . . 'may *compel* the production of evidence or the testimony of witnesses as it considers appropriate.'" *Coronado v. BankAtlantic Bancorp, Inc.*, 222 F.3d 1315, 1320 (11th Cir. 2000) (quoting *United States v. Calandra,* 414 U.S. 338, 343 (1974))). However, a grand jury "may not itself violate a valid privilege, whether established by the Constitution, statutes, or the common law." *Calandra,* 414 U.S. at 346. While "unreasonable" and "oppressive" are not defined under Rule 17, they have a common sense meaning, and courts finding a valid and specific privilege may quash subpoenas on that ground. *See*, *e.g.*, *Jaffee v. Redmond*, 518 U.S. 1, 10, 15 (1996) ("[C]onfidential communications between a psychotherapist and her patient are protected from being compelled pursuant to the federal rules of evidence."); *United States v. Pinson*, No. 2:19-CR-00250, 2020 U.S. Dist. LEXIS 94534, 2020 WL 2830988, at *3 (S.D.W. Va. May 29, 2020) (citation omitted) (finding that a "subpoena may be 'unreasonable or oppressive' if . . . it seeks information that is . . . privileged."); *United States v. Shanahan*, 252 F.R.D. 536, 540 (E.D. Mo. 2008) ("A court may quash or modify a subpoena for the production of documents, if producing the documents would be unreasonable or oppressive, or if the subpoena calls for privileged matter."); *United States v. Caporale*, 806 F.2d 1487, 1504 (11th Cir. 1986) ("The standard governing the exercise of reporter's privilege . . . provides that information may only be compelled from a reporter claiming privilege if the party requesting the information can show that it is highly relevant, necessary to the proper presentation of the case, and unavailable from other sources.")

In *Nixon*, the U.S. Supreme Court began by reiterating the "ancient proposition of law" that "'the public . . . has a right to every man's evidence,' except for those persons protected by a constitutional, common-law, or statutory privilege[.]" *Nixon*, 418 U.S. at 709 (citation omitted). The Supreme Court explained that "[i]t is the manifest duty of the courts to vindicate [the Constitution's] guarantees, and to accomplish that it is essential that all relevant and admissible evidence be produced." *Id.* at 711. Thus, the Court concluded that "when the ground for asserting privilege as to subpoenaed materials sought for use in a criminal trial is

6

based only on the generalized interest in confidentiality, it cannot prevail over the fundamental demands of due process of law in the fair administration of criminal justice." *United States v. Nixon*, 418 U.S. 683, 713 (1974) ("The generalized assertion of privilege must yield to the demonstrated, specific need for evidence in a pending criminal trial."). There, the Supreme Court affirmed a district court's decision to conduct an *in camera* inspection of the materials sought for a criminal trial and issuance of subpoenas for only those materials that were relevant and admissible and not clearly necessitating confidentiality. *Id.* at 714-15 ("[T]he District Court has a very heavy responsibility to see to it that Presidential conversations, which are either not relevant or not admissible, are accorded that high degree of respect due . . . ."

Furthermore, there is a federal common law privilege for law enforcement investigatory materials. *See, e.g.*, *Sheffield v. State Farm Fire & Cas. Co.*, No. CV514-038, 2014 U.S. Dist. LEXIS 163335, at *3-*4 (S.D. Ga. Nov. 21, 2014) (arguing in a civil case about "the federal common-law investigatory privilege, which protects against the disclosure of information contained in law enforcement's ongoing criminal investigations"); *Sirmans v. S. Miami*, 86 F.R.D. 492, 495 (S.D. Fla. 1980) ("The applicable federal privilege for criminal investigative files provides for the protection of files relating to ongoing criminal investigations.") (citing cases); *In re Dep't of Investigation*, 856 F.2d 481, 484 (2d Cir. 1988) (applying the "law enforcement privilege" which is "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation").[4] Even Congress has adopted a limited exception to the Freedom of Information Act for law enforcement records. *See* 5 U.S.C. § 552(b)(7) (exempting from FOIA "records or information compiled for law enforcement purposes, but only to the extent that the production...could reasonably be expected to interfere with enforcement proceedings, ... deprive a person of a right to a fair trial or an impartial adjudication,... disclose the identity of a confidential source, ... disclose techniques and procedures for law enforcement

---

[4] Other courts have relied on state law in determining whether to quash a Rule 17(c) subpoena requesting law enforcement investigatory materials. *United States v. Johnson*, No. 20-00016-KD-N, 2020 U.S. Dist. LEXIS 115067, at *7 (S.D. Ala. July 1, 2020) (granting motion to quash State of Alabama's subpoena where defendant was able to testify as to the relevant events in the criminal case from which she sought records and did not meet the Alabama Code's exception for receiving the privileged records).

7

investigations or prosecutions, …disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or …endanger the life or physical safety of any individual").

Here, through counsel, the GBI agents have articulated a specific and compelling need to keep the subpoenaed materials confidential—that they are records of an ongoing criminal investigation and prosecution and that disclosure of these materials "potentially threatens the integrity of the investigation and potentially exposes identity of witnesses and evidentiary leads before they have been thoroughly investigated and vetted." (Doc. 71 at 8.)[5] Moreover, at the hearing on their motion, the GBI agents' counsel provided additional persuasive arguments to the Court *ex parte*, and they now state that they expect the investigation to conclude by the end of the first quarter of 2021 (Doc. 82). Nonetheless, the U.S. Constitution guarantees criminal defendants the rights to a speedy trial, to due process of law, and to compulsory process for evidence in their favor. U.S. Const. amend. V, VI, XIV.

In balancing the interests of Defendant and the GBI, this Court in its discretion will not require the GBI agents to produce all of the materials sought to defense counsel. Rather, the Court finds it prudent to conduct an *in camera* inspection of the subpoenaed materials, during which it will determine which, if any, documents should be produced to Defendant's counsel in accordance with the U.S. Constitution and the applicable rules and case law.

## CONCLUSION

For the foregoing reasons, the GBI agents' Motion to Quash (Doc. 71) is **GRANTED-IN-PART** and **DENIED-IN-PART**.

The GBI agents shall submit to the Court for *in camera, ex parte* review the materials subpoenaed (Docs. 67 & 67-2) and which are within the GBI agents' possession or control. These materials shall be submitted in electronic form[6] to the Courtroom Deputy no later than **Wednesday, February 17, 2021**. The materials shall be numbered, meaning "Bates-stamped." The materials shall be indexed and accompanied by an *ex parte* memorandum explaining the claim of privilege for each item and indicating whether the item can reasonably be redacted in

---

[5] The GBI agents acknowledge "that this Court is not bound to follow state law but generally this Circuit uses a balancing test to determine whether the need for the information trumps the state's interest in protecting the confidentiality of its classified information." *Id.* Indeed, that is the approach this Court employs here.

[6] Hard copy documents should only be submitted if they cannot be digitized.

8

a way that conceals privileged information but provides evidence to the defense for his trial in this case.

    The Court will thereafter determine which documents shall be produced and may require that Defendant modify his subpoena and perfect service accordingly.

    **SO ORDERED**, this <u>20th</u> day of January 2021.

                                          **/s/ W. Louis Sands**
                                          **W. LOUIS SANDS, SENIOR JUDGE**
                                          **UNITED STATES DISTRICT COURT**